UNITED EMPLOYERS CASUALTY CO. et al. v. PEARLMAN AUTO PARTS & SUPPLY CO.

No. 11547.

Court of Civil Appeals of Texas. Galveston.

June 17, 1943.

Rehearing Denied July 15, 1943.

Devereaux Henderson, of Houston, for appellants.

Sewell, Taylor, Morris & Connally, of Houston, for appellee.

MONTEITH, Chief Justice.

This action was brought by appellant, United Employers Casualty Company, for the recovery of premiums alleged to be due upon policies of public liability and compensation insurance issued to appellee, Pearlman Auto Parts & Supply Company, of Palestine, Texas, and for the recovery of penalties for certain short rate cancellation premiums. Will .G. Knox, who was appointed to liquidate appellant Insurance Company, after the filing of the suit, was joined as party plaintiff.

Appellee answered by general denial and by special plea that, at the time the compensation policy in question was issued, appellant Insurance Company had inspected its business and had contracted to insure it at the rate of $4.91 per one hundred dollars of its pay roll, and that said policy had been issued at that rate and had remained in force from the date of the issuance of the policy until February, 1939, when, without notice to appellee, it had increased the rate under said policy from $4.91 to $19.57 per hundred dollars of its payroll.

Appellee refused to accept delivery of this endorsement of its policy and requested that both policies of insurance be cancelled.

In a trial before the court without a jury judgment was rendered in favor of appellee in the sum of $69.11. All costs were taxed against appellee.

On August 23, 1938, appellant issued its two policies of insurance to appellee, for a period of one year, a public liability policy about which the only dispute is a claim charge for "short rate" cancellation penalty, and a workman's compensation policy, in which appellee's business was classi-

fied as that of "automobile dismantling", under which classification the premium to be paid by appellee was based upon a rate of $4.91 per one hundred dollars of its pay roll. There was attached to said compensation policy what is commonly known as "The Texas Endorsement", which reads in part as follows: "This policy is issued by the Company and is accepted by this Employer with the agreement that the classification and rates of premiums are approved by and are subject to modification by the Board of Insurance Commissioners of the State of Texas in accordance with the manual and rating plans established by the Board of Insurance Commissioners, such approval being in accordance with the authority imposed on the Board of Insurance Commissioners by law. Modification of rates of premiums, either expressed in the policy or upon any indorsement thereafter attached, shall be expressed by indorsement bearing the approval of the Board of Insurance Commissioners and naming the effective date of such change."

Simultaneously with the effective date of said workman's compensation policy, appellee, in writing, authorized the Insurance Commissioner to supply appellant with "complete rating data in support of current and renewal adjustment rates" applicable to said policy. Thereafter appellant Insurance Company requested of the Insurance Commissioner a classification inspection of appellee's business and, in response to said request, the Insurance Commissioner dispatched its engineer to make such survey. A report of the inspection made was filed with the Commission. It stated that appellee's business was that "of operating an auto salvage yard principally" but that it handled pipe and junk iron of all kinds. Upon receiving said report, the Insurance Commissioner was of the opinion that the business of appellee was that of "junk dealer" and thereupon a rider was duly issued to be attached to said policy correcting and changing the classification in the policy from that of "auto dismantling" to that of "junk dealer". This rider was duly approved by the Commission, to-wit, on January 26, 1939, and was made a part of the Commissioner's copy of said compensation policy, the approval being designated by rubber stamp and a copy thereof was sent to appellee to be attached to its policy. Appellee refused to accept delivery of this rider and because thereof appellee requested that both of said policies of insurance be cancelled.

The controlling question presented in the appeal is whether or not the Board of Insurance Commissioners of the State of Texas, acting through the Casualty Commissioner, has the exclusive power to determine and to change the classification of a business operated by the policy holder after a compensation policy has been issued to it and thereby fix the rate under said policy.

Under Article 4679c, Vernon's Annotated Civil Statutes, the Casualty Insurance Commissioner of the State of Texas has general supervision of matters relating to casualty, workmen's compensation, fidelity, guaranty and miscellaneous insurance.

Article 4911, Revised Civil Statutes, provides that the Commission shall determine hazards by classes and fix such rates of premiums applicable to the payroll in each of such classes as shall be adequate to the risks to which they apply and consistent with the maintenance of solvency and the creation of adequate reserves and a reasonable surplus, and for such purpose may adopt a system of schedule and experience rating in such manner as to take account of the peculiar hazard of each individual risk, provided such rate shall be fair and reasonable and not confiscatory as to any class of insurance carriers authorized by law to write workmen's compensation insurance in this state.

Article 4912, Revised Civil Statutes, reads: "Any policyholder, insurance company, or association shall have the right to a hearing before the Commission on any grievance occasioned by the promulgation of any classification, rate or policy form by the Commission; such hearing to be held in conformity with rules to be prescribed by the Commission. No hearing shall suspend the operation of any classification, rate or policy form unless the Commission shall so order."

■ Under above statutes, we think that the power to determine the classification of a business for the purpose of determining the rates of compensation insurance premiums applicable thereto is vested exclusively in the Board of Insurance Commissioners of the State of Texas, and that it was not the intention of the legislators in enacting said Article 4912 to restrict this power by any requirement of notice or hearing to the insurer, but that

its purpose was to grant to both the insurer and the policyholder the right to be heard "on any grievance occasioned by the promulgation of any classification," said hearing to be held upon request of the aggrieved party after the promulgation of the order complained of, and that under said Article 4912 it was necessary for a party to a compensation insurance policy to first submit a grievance occasioned by a change of classification to the Insurance Commission in the absence of pleading and proof that such action by the Commission was an arbitrary, confiscatory, discriminatory or unjust exercise of such power vested in the Commission.

■ Appellee's defense that he was not notified of the Commission's action in changing his classification in this action is in effect a collateral attack upon the order of the Insurance Commissioner, without resort to the machinery set up by the legislature for protesting against the action of the Commission. It would, in effect, nullify the authority granted the Insurance Commissioner and establish either the contracting parties or the courts of this State as an agency for the fixing of compensation rates and classification.

■ The record shows that the order of the Commission on January 26, 1939, eliminating the prior classification, which was based on a report made to the home office by appellant's sales agent, and tentatively approved by the Insurance Commissioner, was made after an engineering inspection by the Commission's own agent. Further, appellee had, in its application for said compensation insurance prior to the issuance of said policy, authorized the Insurance Commissioner to supply all necessary rate data to the Insurance Company. "The Texas Endorsement" which was attached to the original policy delivered to appellee refutes appellee's contention that the parties had the power to contract as to the rate of the compensation policy, in that it provides that the compensation rates embodied in the policy were subject to approval of and modification by the Insurance Commissioner, which modification "shall be expressed by endorsement bearing the approval of the Board of Insurance Commissioners and naming the effective date of such change."

It follows from above conclusions that the judgment of the trial court must be reversed and the cause remanded for determination of the amount of earned premiums due appellant by appellee on the compensation policy in question on the date of its cancellation, and for such additional sums, if any, as may be due appellant under both of said insurance policies for penalties for short rate cancellations thereof by appellee.

Reversed and remanded, with instructions.